1

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9    TERRY JAY MEYERS,

10                   Plaintiff,                    No. CIV S-03-0241 LKK GGH P

11           vs.

12    SHERIFF JIM POPE, et al.,

13                   Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

14    _____/

15    <u>Introduction</u>

16                   Plaintiff, a civil detainee, proceeding pro se, seeks relief pursuant to 42 U.S.C. §

17    1983.  Currently pending before the court is defendants' September 9, 2005, motion for summary

18    judgment, to which plaintiff filed an opposition.  Defendants then filed a reply.[1]

19    <u>Amended Complaint</u>

20                   This action, originally filed on February 7, 2003, proceeds on plaintiff's first

21    amended complaint, filed on May 12, 2003, as modified by the court's November 18, 2003 order,

22    striking plaintiff's first claim for relief for a violation of his First Amendment rights from the

23    amended complaint and as modified by the court's September 30, 2004 order, dismissing

24

25    _____

26           [1] Plaintiff filed a "rebuttal" to the reply, a filing contemplated neither by the Federal Rules
      of Civil Procedure nor the E. D. Local Rules, which filing will be disregarded.

plaintiff's equal protection claim.[2]  See Order, filed November 18, 2003, adopting the August 22, 2003, Findings and Recommendations;[3] and Order, filed September 30, 2004, adopting the August 12, 2004, Findings and Recommendations.[4]  Named as defendants are the Shasta County Board of Supervisors, Shasta County Sheriff Jim Pope, Shasta County Sheriff's Captain Don Van Buskirk, Shasta County Sheriff's Sgt. Casebeer,[5] Shasta County Sheriff's Deputy T. Seals and Shasta County Sheriff's Deputy Carol Burch.[6]

        Plaintiff alleges that he is a civilly committed detainee in custody pursuant to Welf. & Inst. Code § 6600, the Sexually Violent Predator Act (SVPA).[7]  He is currently involuntarily confined at Atascadero State Hospital, pursuant to Welf. & Inst. Code § 6604,[8] and

---

[2] In the Order, filed on September 30, 2004, defendants' November 25, 2003, motion to dismiss was granted only as to the equal protection claim, but it was also noted that plaintiff had no claim concerning his transportation and receipt at the county jail per se.  See also, Order, filed on August 8, 2005, p. 7.

[3] The specific First Amendment claim for relief that was stricken was plaintiff's claim that he was "deprived of 'his right to freedom of the press' by allegedly not being allowed to watch television at Shasta County Jail."  See Findings and Recommendations, filed August 22, 2003, p. 1.

[4] Plaintiff's allegations were also set forth in the August 8, 2005, Order.

[5] Defendants, in their summary judgment motion, p. 1, state that the previous identification of defendant Casebeer as "Caselica" is incorrect.

[6] As has been repeatedly noted in prior court orders and findings and recommendations, the court's order filed, on August 25, 2003, at footnote 1, states that although plaintiff had named this individual "C. Oblinger" in the May 12, 2003 amended complaint, by notice filed on July 14, 2003, plaintiff corrected the name to "Carol Birch."  In their summary judgment motion, p. 1, defendants have now corrected the apparently erroneous spelling of "Birch" to "Burch."

[7] "'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).

[8] § 6604 sets forth, inter alia, that a person determined to be a sexually violent predator "shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health...."

alleges that from January 1, 2002 through November 31 [sic], 2002,[9] he was held at the Shasta County Jail pending his last recommitment trial.  Amended Complaint (AC), pp. 4-5.

Plaintiff's original commitment date was December 19, 1997.  AC, p. 4.  Plaintiff claims that defendants' policies, practices and customs have violated both state and federal constitutions and statutes.  AC, pp. 3-4.  Plaintiff complains that he was placed in Administrative Segregation (Ad Seg) during the entire time he was at Shasta County Jail and that this is a punishment generally reserved for inmates in jail on charges of penal violations who are engaged in misconduct or are involved in high profile cases.  AC, p. 6.  Plaintiff alleges that as a civil detainee, he has been subjected to more punitive treatment than those subject to penal statutes, that he has had to submit to unsafe, unhygienic and overly restrictive conditions of confinement, including having his freedom of movement and association limited by being restricted from confidential phone calls and mail and having overly restrictive visiting conditions imposed, having endured excessive physical restraints and unreasonable searches and seizures of his property and his person.  AC, pp. 4-5.  Plaintiff alleges violations of his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the federal constitution.  AC, p. 5. As noted earlier, however, plaintiff has no equal protection claim remaining.

Plaintiff alleges that defendants Shasta County Board of Supervisors and Sheriff Pope are responsible for the policies, practices and customs resulting in the punitive conditions of his confinement.  AC, p. 7.

Defendant Van Buskirk is responsible for depriving plaintiff of privileges enjoyed by inmates of the jail not subject to disciplinary action by ordering plaintiff's housing status changed from the medical unit to ad seg.  AC,  p. 7.  Defendant Van Buskirk failed to correct plaintiff's conditions of confinement after being informed of the violations against plaintiff and knowingly allowed other defendants to violate his rights on a daily basis.  AC, pp. 7-8.

---

[9] The court infers that plaintiff means to say November 30, 2002, as there is no Nov. 31.

Defendant Casebeer, responsible for the first level review of inmates' complaints, knowingly allowed on-going violations of plaintiff's civil rights to occur, informing plaintiff in response to his written complaints, "Where you are housed is where you will stay."  AC, p. 8.

Defendant Seals worked the floor and pod of the medical wing of the jail from 7:00 a.m. to 7:00 p.m. in January of 2002.  AC, p. 8.  Defendant Seals deprived plaintiff of his right to confidential phone calls, confidential visits, confidential mail (legal and personal), adequate showers/hygiene (exposed to bodily wastes and fluids while showering), adequate socialization, adequate sleep, adequate and sanitary meals, adequate access to religious services. AC, p. 8, 12.  Defendant Seals subjected plaintiff to excessive isolation and physical restraints in the form of waist and ankle shackles and to potential physical assaults when plaintiff was allowed phone use by handcuffing plaintiff to a bolt in the main hallway and leaving plaintiff where other inmates were free to walk.  AC, pp. 8-9.  On September 6, 2002, defendant Seals, while working the jail's ad seg unit, ordered plaintiff to the pod's dayroom while a "penal detainee" was present.  AC, p. 9.  On an unspecified occasion, defendant Seals ordered plaintiff to the pod dayroom when a whole group of "penal detainees" were present.  On another unidentified occasion, defendant Seals ordered plaintiff to line up with inmates held pending criminal proceedings so that plaintiff and the other inmates could be escorted to another part of the jail so the ad seg unit could be sprayed for bugs.  Id.  Defendant Seals, on another occasion, subjected plaintiff to a possible physical assault, when he ordered plaintiff to go to court unescorted from his ad seg cell to an elevator with no deputies in sight.  Id.

Defendant Carol Burch,[10] who worked in the jail from 7:00 a.m. to 7:00 p.m. in January of 2002, deprived plaintiff of his civil rights as a civil detainee by denying plaintiff  his right to confidential phone calls, confidential visits, confidential mail (legal and personal), adequate showers/hygiene (exposed to bodily wastes and fluids while showering), adequate

---

[10] As noted at footnote 5, this defendant was misnamed "C. Oblinger" in the amended complaint.

socialization, adequate sleep, adequate and sanitary meals, adequate access to religious services. AC, pp. 9-10, 12.  Meals were served by penal inmates who often were not wearing hair nets or gloves.  Id.  Plaintiff observed inmates serving food to other inmates occasionally spitting into the food.  AC, p. 10.  Plaintiff was also deprived of his right to treatment for substance abuse, to be free from unreasonable searches and seizures and from his right to be free from inhumane continuous cell-lockdown.  Id.  Defendant Burch ordered plaintiff into locked hallways with inmates detained for criminal proceedings and often ordered plaintiff to return to his cell by walking unprotected among such inmates.  Id.  Defendant Burch was apparently observed (by an unidentified party) going through plaintiff's confidential legal work, including plaintiff's confidential psychiatric reports from the Dept. of Mental Health.  Id.

Plaintiff alleges generally that defendants do not have written policies setting forth rights of mentally ill and civilly committed patients, rights delineated in the CAL. CODE REGS. tit.xxii and Cal. Welf. & Inst. Code §§ 5325,[11] 5325.1 and 5328.  AC, pp. 11-12.  Plaintiff also notes that the rights of mentally ill patients are outlined in 42 U.S.C. §§ 9501, 10841.  Plaintiff alleges violations of his rights under the First, Fourth and Fourteenth Amendments, including, under the Fourteenth Amendment, violations of his procedural and substantive due process rights (his equal protection rights, as noted above, having been subsequently dismissed); plaintiff also alleges violations of the double jeopardy clause under the Fifth and Fourteenth Amendments, violations of the Ex Post Facto Clause, and violations of the Sixth and Eighth Amendments, and of the right to privacy.  AC, p. 5, 14-19.  Plaintiff seeks monetary damages.[12]

---

[11]  Under §5325, persons who are involuntarily detained for treatment or evaluation (as well as voluntary patients and those who are mentally retarded) have, inter alia, the following rights: to wear their own clothing; to keep personal possessions; to keep and spend a reasonable amount of money for small purchases; to see visitors daily; to make and receive confidential calls; to mail and receive unopened correspondence; to refuse convulsive treatment and psychosurgery.

[12]  As has been noted in earlier orders and findings and recommendations, the court, in its order dismissing the original complaint with leave to amend, filed on April 22, 2003, found that plaintiff, not incarcerated at Shasta County Jail at the time of filing his complaint, had not shown

1        <u>Motion for Summary Judgment</u>

2        <u>*Legal Standard for Summary Judgment*</u>

3        Summary judgment is appropriate when it is demonstrated that the standard set

4   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

5   there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

6   as a matter of law."  Fed. R. Civ. P. 56(c).

7                Under summary judgment practice, the moving party

8                always bears the initial responsibility of informing the district court
                 of the basis for its motion, and identifying those portions of "the
9                pleadings, depositions, answers to interrogatories, and admissions
                 on file, together with the affidavits, if any," which it believes
10               demonstrate the absence of a genuine issue of material fact.

11   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

12   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14   to interrogatories, and admissions on file.'"  <u>Id</u>.  Indeed, summary judgment should be entered,

15   after adequate time for discovery and upon motion, against a party who fails to make a showing

16   sufficient to establish the existence of an element essential to that party's case, and on which that

17   party will bear the burden of proof at trial.  <u>See id</u>. at 322, 106 S. Ct. at 2552.  "[A] complete

18   _____

19   how his claims had not been mooted; his claims for injunctive relief were therefore dismissed.
     <u>See Order</u>, filed on April 22, 2003, p. 4.  Subsequently, however, in his amended complaint,
20   plaintiff averred that he is likely to be returned to Shasta County Jail every two years for a
     recommitment trial.  The court would have found persuasive plaintiff's argument that, pursuant
21   to Cal. Welf. & Inst. Code § 6600 et seq., the Sexually Violent Predator (SVP) Act, a person
     shall be returned for recommitment proceedings to the County in which he/she was originally
22   committed every two years and would have found his injunctive relief claims as framed in the
     amended complaint not to be moot.  Defendants averred as much in their November 25, 2003
23   motion to dismiss (p.1), citing Cal. Welf & Inst. Code § 6602.  Indeed, plaintiff avers that when
     he is not at Atascadero, he is confined at Shasta County Jail for commitment/recommitment
24   hearings.  AC, pp. 2, 6.  However, plaintiff wholly undercut any injunctive relief claims, as
     defendants noted, by later expressly stating in the amended complaint that it is limited to claims
25   of pain and suffering arising from the conditions of his confinement at Shasta County Jail
     "between January 1, 2002 and November 31 [sic], 2002."  AC, p. 6, ¶ 13.  Moreover, plaintiff
26   seeks only money damages in his "prayer for relief."  AC, pp. 19-20.

1    failure of proof concerning an essential element of the nonmoving party's case necessarily

2    renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be

3    granted, "so long as whatever is before the district court demonstrates that the standard for entry

4    of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

5            If the moving party meets its initial responsibility, the burden then shifts to the

6    opposing party to establish that a genuine issue as to any material fact actually does exist. See

7    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

8    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

9    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

10   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

11   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

12   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

13   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

14   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

15   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

16   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

17   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

18           In the endeavor to establish the existence of a factual dispute, the opposing party

19   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

22   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23   genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

24   56(e) advisory committee's note on 1963 amendments).

25           In resolving the summary judgment motion, the court examines the pleadings,

26   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7

1   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

2   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

3   placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

4   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

5   opposing party's obligation to produce a factual predicate from which the inference may be

6   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

7   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

8   party "must do more than simply show that there is some metaphysical doubt as to the material

9   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

10  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

11  1356 (citation omitted).

12          On September 25, 2003, the court advised plaintiff of the requirements for

13  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

14  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

15  Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

16              *Discussion*

17          Defendants move for summary judgment as a matter of law.

18          The following facts are undisputed: plaintiff is confined at Atascadero State

19  Hospital (ASH) pursuant to a civil commitment under California's Sexually Violent Predator Act

20  (SVPA).  Plaintiff was transferred on three occasions from Atascadero (ASH) to Shasta County

21  Jail (Jail) on December 7, 2001; on July 26, 2002; and on October 4, 2002.  The period of time at

22  issue in this complaint is January 1, 2002 through December 31, 2002.[13]  On October 30, 2002,

23

24          [13] Defendants identify the relevant period as being from January 1, 2002 to December 31,
    2002 even though the amended complaint names the period as extending only until November
25  31, 2002; as there is no 31st of November, plaintiff probably intended November 30, 2002 as the
    ending date, but could have meant December 31, 2002.  However, plaintiff was evidently housed
26  at Shasta County Jail (hereafter, Jail) during the third and final period of confinement until
    December 12, 2002, when he was transferred back to the custody of ASH (defendants' Exh. K),

1    plaintiff was found by a Shasta County jury to be, beyond a reasonable doubt, a Sexually Violent

2    Predator.[14]  Plaintiff is not a gravely disabled mental health patient, as defined by California law,

3    and has never been confined under the Lanterman Petris Short Act, codified at Welf.& Inst. Code

4    § 5525 et seq.[15]  Plaintiff refused SVP mental health treatment during 2002.  Shasta County Jail

5    received instructions from Atascadero not to provide plaintiff with mental health treatment

6    programs or medication during his limited jail confinement.  On January 1, 2002, Cal. Penal

7    Code § 4002 was enacted, allowing county jail officials to confine sexually violent predators in

8    administrative segregation (ad seg).[16]  Plaintiff repeatedly refused to sign a waiver that would

9    have allowed jail officials to house him in protective custody.  During his periods of confinement

10   at Shasta County Jail in 2002, plaintiff suffered no serious physical injury or medical problems or

---

and in his opposition, plaintiff endorses the idea of the period at issue as extending until
December 31, 2002.  As defendants themselves assert the period as covering the entire 2002
calendar year, the court will not narrow it beyond that point, notwithstanding the somewhat
confused earlier dating in the allegations of the amended complaint.

   [14] While plaintiff "objects" to defendants' references to the SVPA and to plaintiff's status
as a Sexually Violent Predator, on the inapposite ground that they are irrelevant and likely to
inflame and bias a jury, he does not dispute the accuracy of defendants' characterization of his
status, in fact, he asserts that it is "an actual fact," never contested by him.  See "plaintiff's
objection to defendants' points and authorities....," pp. 1, 4-5, which the court construes as
plaintiff's opposition to defendants' dispositive motion.

   [15] Defendants, apparently inadvertently, incorrectly identified the Cal. Welf. & Inst. Code
Section, codifying Lanterman-Petris-Short Act as § 5525 et seq., rather than § 5325 et seq.

   [16] "Persons committed on criminal process and detained for trial, persons convicted and
under sentence, and persons committed upon civil process, shall not be kept or put in the same
room...."  Cal. Penal Code § 4002(a), in part.
      "Inmates who are held pending civil process under the sexually violent predator laws
shall be held in administrative segregation.  For purposes of this subdivision, administrative
segregation means separate and secure housing that does not involve any deprivation of
privileges other than what is necessary to protect the inmates and staff. Consistent with Section
1610, to the extent possible, the person shall continue in his or her course of treatment, if any. An
alleged sexually violent predator held pending civil process may waive placement in secure
housing by petitioning the court for a waiver.  In order to grant the waiver, the court must find
that the waiver is voluntary and intelligent, and that granting the waiver would not interfere with
any treatment programming for the person requesting the waiver.  A person granted a waiver
shall be placed with inmates charged with similar offenses or with similar criminal histories,
based on the objective criteria set forth in subdivision (a)."  Cal. Penal Code § 4002(b).

1   assaults by other inmates or by sheriff's deputies.   Plaintiff's attorney did not file an appeal

2   concerning the re-commitment process based on plaintiff's complaints about access to the law

3   library, telephone access, or visiting access.   Plaintiff corrected, in his deposition, the allegations

4   in his amended complaint that he was subjected to unnecessary and random visual body cavity

5   searches throughout the calendar year 2002.  See MSJ, Exh W.

6            Plaintiff does not dispute that he is not a gravely disabled mental health patient,

7   nor that he is not a patient pursuant to the Lanterman Petris Short Act, codified at Welf.& Inst.

8   Code § 5325[17] et seq.; nevertheless, he maintains that he is entitled to the rights and privileges set

9   forth under § 5325 as an involuntarily detained civilly committed individual.  Opp., pp. 3-5.[18]

10  Although plaintiff does not dispute that he refused Sexually Violent Predator treatment

11  throughout 2002, he asserts that under the SVPA, the Sex Offender Commitment Program

12  (SOCP) is not mandatory and that his 90 day treatment conferences and discharge summary

13  written by ASH physicians for 2002 indicate that plaintiff was involved in Phase I treatment of

14  the SOCP and still is today.  Opp., p. 6.  He also asserts that he has actively participated in

15  various treatment groups, including: Thinking Skills, Criminal Thinking, Arts and Crafts, 12-

16  week Substance Abuse, 4-week Substance Abuse, Alcoholics Anonymous (AA), Narcotics

17  Anonymous (NA). Opp., p. 6.  Plaintiff does not dispute that Cal. Penal Code § 4002 applies to

18  him but contends that defendants did not apply the provision properly in his case.  Opp., p. 8.

19  \\\\\

20  \\\\\

21

22      [17]  Defendants, apparently inadvertently, incorrectly identified the Cal. Welf. & Inst. Code
    Section, codifying Lanterman-Petris-Short Act as § 5525 et seq., rather than § 5325 et seq.

23

24      [18]  Plaintiff, later in his opposition (pp. 18-19), does attempt to reverse himself and assert
    that he is a patient pursuant to Welf. & Inst. Code § 5325 and that the Lanterman-Petris-Short
25  Act applies to all persons "involuntarily detained," but in his response to defendant Van
    Buskirk's request for admissions, plaintiff had explicitly admitted that he had "never been
    involuntary [sic] confined or medicated under the Lanterman-Petris Short Act ("LPS"), codified
26  at California Welfare and Institutions Code § 5325 et seq." Defendants' Exhs. F & G, no. 18.

1  Cal. Penal Code § 1610(b),[19] referenced in Cal. Penal Code § 4002 (see footnote 16) requires that

2  a civil detainee awaiting commitment or re-commitment proceedings must be housed in a facility

3  wherein program treatment may be continued.  Opp., p. 9.  Defendants counter that, under

4  instructions from ASH physicians, the Jail was not to provide mental health programs or

5  medication during his limited confinement.  MSJ., p. 12, Exh. H, p. 9, Exh. I, p. 2.  (Plaintiff

6  takes umbrage at defendants use of his confidential medical records, but plaintiff provides no

7  persuasive authority for assertion of any such privilege, especially when it is plaintiff who has

8  put the matter at issue by his litigation).

9       Although defendants do not include it as an undisputed fact, no party disputes that

10 plaintiff was retained in Shasta County Jail from December, 2001, upon plaintiff's arrival from

11 ASH in the Jail's Medical Unit until February 2002, whereupon he was placed in Administrative

12 Segregation at the Jail until June 20, 2002; thereafter, he was retained in Administrative

13 Segregation at the jail from July 26, 2002 upon his transport from ASH until September 9, 2002,

14 and from October 4, 2002 until December 12, 2002.  Defendant Van Buskirk's Declaration at ¶¶

15 5, 6, 7.

16      Defendants argue that plaintiff is responsible for his placement in a unit with

17 restricted, lock-down conditions for failing to seek a waiver "similar to the procedure set forth in

---

19   Cal. Penal Code § 1610(b) states, in relevant part, that "the facility designated by the community program director may be a state hospital, a local treatment facility, a county jail, or any other appropriate facility, so long as the facility can continue the person's program of treatment, provide adequate security, and minimize interference with the person's program of treatment.  If the facility designated by the community program director is a county jail, the patient shall be separated from the general population of the jail.  In the case of a sexually violent predator, as defined in Section 6600 of the Welfare and Institutions Code, who is held pending civil process under the sexually violent predator laws, the person may be housed as provided by Section 4002.  The designated facility need not be approved for 72-hour treatment and evaluation pursuant to the provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code); however, a county jail may not be designated unless the services specified above are provided, and accommodations are provided which ensure both the safety of the person and the safety of the general population of the jail...."

1   Penal Code section 4002" (MSJ, p. 15) and that defendants fully complied with Cal. Penal Code

2   § 4002 and were even more liberal in repeatedly providing plaintiff "the opportunity to sign a

3   waiver to transfer into the more open Protective Custody unit" (MSJ, p. 17)

4          As a civil detainee, the applicable standard for plaintiff is not the more restrictive

5   standards for cruel and unusual punishment under the Eighth Amendment; rather, "'the more

6   protective fourteenth amendment standard applies to conditions of confinement when detainees

7   ... have not been convicted' of a crime." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004),

8   quoting Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir, 1987), citing Youngberg v. Romeo,

9   457 U.S. 307, 102 S. Ct. 2452 (1982) (civilly committed individuals), and Bell v. Wolfish, 441

10  U.S. 520, 99 S. Ct. 1861 (1979).  Defendants argue that plaintiff provides no evidence that any

11  defendant knew of the deprivations alleged and thereafter deliberately ignored that information;

12  however, this contention applies an inappropriate Eighth Amendment standard to plaintiff's

13  claims.  Defendants are entitled to summary judgment as to any of plaintiff's claims wherein he

14  seeks to invoke the Eighth Amendment because, as noted, it is the broader protections of the

15  Fourteenth Amendment that apply in the context of a pretrial civil detainee.

16         The Fourteenth Amendment requires the government to do more
17     than provide the "minimal civilized measure of life's necessities,"
       Rhodes [v. Chapman], 452 U.S. [337] at 347, 101 S.Ct. 2392, for
18     non-convicted detainees. Rather, "due process requires that the
       nature and duration of commitment bear some reasonable relation
19     to the purpose for which the individual is committed." Jackson v.
       Indiana, 406 U.S. 715, 738, 92 S.Ct. 1845 [] (1972).

20         The case of the individual confined awaiting civil commitment
       proceedings implicates the intersection between two distinct
21     Fourteenth Amendment imperatives. First, "[p]ersons who have
       been involuntarily committed are entitled to more considerate
22     treatment and conditions of confinement than criminals whose
       conditions of confinement are designed to punish." Youngberg,
23     457 U.S. at 321-22, 102 S.Ct. 2452. Second, when the state detains
       an individual on a criminal charge, that person, unlike a criminal
24     convict, "may not be *punished* prior to an adjudication of guilt in
       accordance with due process of law.'" Bell, 441 U.S. at 535, 99
25     S.Ct. 1861 (emphasis added); see also Demery v. Arpaio, 378 F.3d
       1020, 1029 (9th Cir.2004)("[T]he Fourteenth Amendment
26     prohibits all punishment of pretrial detainees."). As civil detainees

                                              12

> retain greater liberty protections than individuals detained under criminal process, see Youngberg, 457 U.S. at 321-24, 102 S.Ct. 2452, and pre-adjudication detainees retain greater liberty protections than convicted ones, see Bell, 441 U.S. at 535-36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting civil commitment proceedings is entitled to protections at least as great as those afforded to a civilly committed individual and at least as great as those afforded to an individual accused but not convicted of a crime.

Jones v. Blanas, 393 F.3d at 931-932.

In Jones v. Blanas, where the plaintiff was, like plaintiff herein, an individual detained in a county jail awaiting involuntary civil commitment proceedings under the SVPA, the Ninth Circuit found "that the conditions of confinement for an individual detained under civil process but not yet committed must be tested by a standard at least as solicitous to the rights of the detainee as the standards applied to a civilly committed individual and to an individual accused but not convicted of a crime." Id., at 932.

While the Jones Court noted that the Eleventh Circuit[20] has gone so far as to hold that it is unconstitutional for individuals awaiting involuntary civil commitment proceedings to be held in jail at all, the Ninth Circuit did not venture so far, but asserted that "[a]t a bare minimum," such an individual cannot be subjected to conditions amounting to punishment. Id., at 932 [citations omitted].

Because a person detained pending confinement under the SVPA is a civil detainee, "an SVPA detainee is entitled to 'more considerate treatment' than his criminally detained counterparts." Id., citing Youngberg, 457 U.S. at 321-22. "[W]hen a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" Id., citing Sharp v. Weston, 233 F.3d 1166, 1172-73 (9th Cir. 2000) (Youngberg required that \\\\\

---

[20] See Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984).

1  those civilly confined at a commitment center must receive "more considerate" treatment than

2  inmates at a correctional center where the commitment center was located).

3         In addition, "when an individual awaiting SVPA adjudication is detained under

4  conditions more restrictive than those the individuals would face following SVPA confinement,

5  we presume the treatment is punitive." Jones v. Blanas, 393 F.3d at 933.  California's SVPA

6  does not implicate constitutional Double Jeopardy Clause and Ex Post Facto Clause guarantees,

7  Seling v. Young, 531 U.S. 250, 121 S. Ct. 727 (2001); Kansas v. Hendricks, 521 U.S. 346, 117

8  S. Ct. 2072 (1997), because, the state supreme court has found that the statutory scheme of the

9  SVPA is civil, and not criminal, in nature.  Hubbart v. Superior Court, 19 Cal.4th 1138, 81 Cal.

10 Rptr.2d 492 (Cal. 1999).  Explicitly, as the Ninth Circuit has observed, California's Supreme

11 Court noted that the state legislature, "made clear that, despite their criminal record, persons

12 eligible for commitment and treatment as SVP's are to be viewed 'not as criminals, but as sick

13 persons.'" Jones v. Blanas, supra, at 933, quoting Hubbart, supra at 1171, 81 Cal. Rptr.2d at

14 514.[21]  Thus, the Ninth Circuit states plainly that, having held that confinement of sexually

15 violent predators is civil for purposes of analysis under the Ex Post Facto Clause (or as to the

16 Double Jeopardy Clause), so the confinement is civil for the purpose of establishing the rights to

17 which a detainee is entitled while confined.  Jones v. Blanas, supra, at 933.  "Civil status means

18 civil status, with all the Fourteenth Amendment rights that accompany it." Id.  (This also means,

19 of course, as to any of plaintiff's claims wherein he inappropriately alleges violations of the

20 Double Jeopardy and Ex Post Facto Clauses, defendants are correct that such claims must be

21 rejected and they are entitled to summary judgment as to those inapposite Fifth Amendment

22 claims.)

23         In sum, a civil detainee awaiting adjudication is entitled to
          conditions of confinement that are not punitive. Under Bell and our
24        circuit precedent, a restriction is "punitive" where it is intended to
          punish, or where it is "excessive in relation to [its non-punitive]

25

26    [21] The quotation in Hubbart, supra, 81 Cal. Rptr.2d is miscited in Jones, supra, as at 513.

purpose," <u>Demery</u>, 378 F.3d at 1028..., or is "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods," <u>Hallstrom</u>, 991 F.2d at 1484.... With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment. Finally, to prevail on a Fourteenth Amendment claim regarding conditions of confinement, the confined individual need not prove "deliberate indifference" on the part of government officials.

<u>Jones v. Blanas</u>, 393 F.3d at 933-34.

In his declaration, defendant Captain Don Van Buskirk states that when plaintiff first arrived at Shasta County Jail in December 2001, he was housed in the jail's medical unit on the first floor of jail, isolated from other jail housing units and with controlled movement.  Von Buskirk Decl. ¶ 5.  Defendant Van Buskirk declares that plaintiff was safe, separated from other prisoners and provided with his own television and coffee dispenser.  <u>Id</u>.  However, in February of 2002, the medical unit became needed for medical patients and, in addition, defendant Van Buskirk was informed of changes in Cal. Penal Code § 4002, which allowed for housing of SVPs in administrative segregation so long as they were confined in a cell separate from "criminal defendants" and not allowed to mix with criminal defendants in the dayroom.  <u>Id</u>., at ¶ 6.

As noted, plaintiff was housed at the jail on three occasions in 2002:  from December 2001 to June 20, 2002; from July 26, 2002 until September 9, 2002; from October 4, 2002 until December 12, 2002.  <u>Id</u>., ¶ 7.  Defendant Van Buskirk concedes that inmates in the ad seg unit have restricted out of cell time.  <u>Id</u>., ¶ 4.  Inmates in the ad seg unit have different security needs and may have "'keep-away'" status or pose a security threat.  <u>Id</u>.  Prisoners in ad seg shower, access the dayroom, make phone calls and exercise alone; due to the numbers that must be allowed dayroom time alone, out of cell time is limited and the inmates leave their cells based on a schedule.  <u>Id</u>.

\\\\\\

1    Defendant Van Buskirk avers that some SVPs have been safely housed in the

2   Jail's Protective Custody (PC) Unit; PC prisoners are separated from other prisoners but function

3   as the general population housing unit does.  Id., ¶ 3.  PC inmates have almost unlimited

4   dayroom access, are allowed to mingle with other PC inmates, can shower, watch television and

5   make collect phone calls for up to eight hours a day on two different out-of-cell shifts.  Id.

6    Defendant Van Buskirk declares that following the Ninth Circuit's decision in

7   Jones v. Blanas, he has modified Jail policies with respect to housing and services provided to

8   SVPs.  Id., ¶ 4.  The revised policy calls for considering alternative housing options for SVPs

9   prior to moving an SVP to ad seg, such as housing them in medical cells or converting the small,

10   first floor segregation units to an SVP unit.  Id.  In practice, following Jones, all SVPs have been

11   housed in a medical cell.  Id.  Moreover, according to defendant Van Buskirk, the new Jail policy

12   requires a level of services that exceeds those afforded pretrial criminal detainees, included

13   increased visitation, outdoor recreation and enhanced law library access.  Id.

14    The undersigned would not find that the conditions of administrative segregation

15   in the jail were compliant with Jones v. Blanas, at least as a matter of law at summary judgment.

16   However, the court finds plaintiff's refusal to be placed in the still safe, but much less restrictive

17   protective custody has waived any damages claim arising out of a Fourteenth Amendment due

18   process violation.  Plaintiff concedes that defendants repeatedly offered him this custody status,

19   (see plaintiff's excerpted deposition testimony at pp. 6-9 of the MSJ points and authorities).  That

20   plaintiff thought, correctly or not (and the undersigned believes incorrectly) that he might be

21   waiving his claims in this lawsuit or otherwise to claim that he was "civilly committed" if he

22   were to agree to a protective custody arrangement does not permit him to sue for damages

23   accruing as a result of his decision.  Plaintiff certainly has provided no authority for such a

24   position.  No evidence in this case suggests that protective custody would not meet the minimum

25   limits set forth for pretrial detainees, and the evidence that has been submitted indicated that it

26   \\\\\

1   would (unlimited dayroom access, television privileges, phone privileges, hygienic privileges in a

2   safe(r) environment).

3              To hold otherwise would impose an impractical burden on custody officials.  If

4   plaintiff's reasoning were to be upheld, prisoners could sue for damages for lack of exercise even

5   though they chose to remain in their cells because the exercise offered was not that precisely

6   desired by the prisoners.  Or, damages could be sought because prisoners would not eat the

7   otherwise acceptable food provided because the "starving" prisoners had other dietary desires.

8   Finally, a prisoner could sue for a failure to protect in a prison environment even though officials

9   gave the prisoner an opportunity to remove himself from a dangerous situation.  Prisoners or civil

10  detainees have a duty to help themselves when possible to avoid constitutional deprivations.

11  Prisoners may waive constitutional rights to which they might otherwise be entitled.  See Berry v.

12  Sherman, 365 F.3d 631, 634 (8th Cir. 2004).

13             Plaintiff waived his rights to lesser custody restrictions.  Summary judgment is

14  appropriate for defendants.

15  Qualified Immunity

16             Defendants' claim that they are entitled to qualified immunity as to plaintiff's

17  claims of entitlement based status as a civil detainee (MSJ, pp. 17-19) is well founded.

18          Qualified immunity shields government officials "from liability for
            civil damages insofar as their conduct does not violate clearly
19          established statutory or constitutional rights of which a reasonable
            person would have known." Harlow v. Fitzgerald, 457 U.S. 800,
20          818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted);
            see also Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89
21          L.Ed.2d 271 (1986) (qualified immunity protects "all but the
            plainly incompetent or those who knowingly violate the law").
22          Consideration of qualified immunity in a Section 1983 claim raises
            two questions. Menotti v. City of Seattle, 409 F.3d 1113, 1152 (9th
23          Cir.2005). Under the approach set out by Saucier v. Katz, we first
            must ask "whether a constitutional right would have been violated
24          on the facts alleged." 533 U.S. 194, 200, 121 S.Ct. 2151, 150
            L.Ed.2d 272 (2001). "If no constitutional right would have been
25          violated were the allegations established, there is no necessity for
            further inquiries concerning qualified immunity." Id. at 201.

26

If a constitutional violation is established, we consider "whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Menotti, 409 F.3d at 1152, quoting Saucier, 533 U.S. at 202. "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case." San Jose Chapter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 971 (9th Cir.), cert. denied sub nom., Decena v. San Jose Charter of Hells Angels Motorcycle Club, --- U.S. ----, 126 S.Ct. 796, 163 L.Ed.2d 627 (2005), citing Saucier, 533 U.S. at 201. "Under the Harlow standard ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted ." City of San Jose, 402 F.3d at 971, quoting Saucier, 533 U .S. at 202. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley, 475 U.S. at 341.

Brittain v. Hansen , 2006 WL 1702721, *3 (9th Cir.2006).

Assuming for the moment that plaintiff has maintained a cognizable constitutional claim, the undersigned finds that reasonable officers would not find that the law regarding SVP placements in County jail was sufficiently established to avoid qualified immunity. First, Jones v. Blanas, supra, the specific case on point here was not decided until two years after the events in question here. Although the law on pre-trial detainees was clearly established prior to this time, the categorization of SVP defendants, convicted sex offense felons who were contesting the after-sentence mandated "civil commitment treatment," were by no means clearly defined as fitting within the group of ordinary pre-trial detainees. Moreover, plaintiff's refusal to opt to remove himself from the harsher conditions attributed to dangerous or disciplined convicted prisoners takes this case far outside the parameters of an ordinary pre-trial detainee. Significantly, defendants were reasonably relying on state law, Cal. Penal Code § 4002(a) which appeared to permit the administrative segregation classification of plaintiff. While blind reliance on patently unconstitutional state law is not sufficient to avoid liability, even via qualified immunity, bona-fide reliance on an operative statute is a factor in the analysis which favors defendants. Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.1994) (noting that "the

existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional").

Finally, the placement of a convicted sex offender simply in the general population of pre-trial detainees is near an Eighth Amendment violation.  Anyone who has worked closely with prisons and jails recognizes the danger of such placement to the sex offender at the hands of other prisoners.  The court gives some recognition of the plight that relatively small county jail personnel have with respect to the many demands for housing classifications in a limited facility.  While the Constitution will not forgive a patent violation of rights on account of a lack of funds or facilities, neither does the Constitution expect naivete on the part of courts.  When defendants are attempting to balance many competing needs, including the safety of the sex offender, a bona fide attempt to do the best one can to respect rights in a difficult situation is a factor which weighs in favor of qualified immunity.

For all these reasons, the undersigned finds that the right of plaintiff, a SVP civil committee, to be housed a pre-trial detainee, with equivalent rights and privileges of a pretrial detainee were not so clearly established such that the reasonable officer would have known of this law insofar as the law requires placement in the general population, or in a "special place" in the jail where all privileges available to pretrial detainees are available.[22]

First Amendment Right of Access to the Courts

Defendants contend that plaintiff was not denied his First Amendment right of access to the courts[23] by the restrictive conditions to which he was subject, a fact which plaintiff has failed to dispute sufficiently.  Plaintiff alleges that the punitive conditions of his housing hindered his right of access to the courts because he was unable to access the law library

---

[22]  The result here is not inconsistent with the result on the motion to dismiss.  As stated in the latter Findings, more factual development was required, and such development took place in this motion.

[23] Defendants incorrectly designate this right as arising from the Sixth Amendment. (MSJ, p. 22).

1   adequately to assist his counsel with his civil commitment proceedings.  Defendants' argument

2   that plaintiff simply has not substantiated the requisite injury for a First Amendment right of

3   access to the court's claim is well-taken.

4         Plaintiff's vague assertion that in some unspecified way he was unable to assist

5   his attorney by not accessing the Jail law library does not identify an actual injury.  Lewis v.

6   Casey, 518 U.S. 343, 351-53, 355, 116 S. Ct. 2174 (1996) (prisoner must allege actual injury).

7   Specifically, plaintiff must allege a specific instance in which he was denied the tools needed to

8   litigate in a criminal trial or appeal, a habeas proceedings, or a section 1983 civil rights action

9   challenging the conditions of confinement.  See id. at 355, 116 S.Ct. at 2182.  The Supreme

10  Court held that before a denial of access to the courts claim can go forward, an inmate must

11  "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  Id.

12  Accordingly, before a claim of denial of access to the courts can proceed, an inmate must

13  demonstrate that he was precluded or thwarted in his efforts to present a legally or factually

14  arguable claim to the courts.  Plaintiff has failed to do so, either in his amended complaint or in

15  his opposition.  Moreover, it is clear that plaintiff had counsel to represent him in the civil

16  commitment proceedings he references.  Defendants are entitled to summary judgment on this

17  claim.

18  Quasi-Judicial Immunity

19        Defendants contend that they are entitled to quasi-judicial immunity because they

20  were obligated to house plaintiff because of a state court order requiring defendants to transport

21  plaintiff from ASH to the Jail for re-commitment proceedings; thus, the manner of his housing

22  and confinement at the Jail was not attributable to a policy, practice or procedure of the Sheriff's

23  Department or the County.  MSJ, p. 23 & Exhs. A through D.

24        Quasi-judicial immunity protects an officer who lawfully executes a valid court

25  order.  See Coverdell v. Department of Soc. and Health Servs., 834 F.2d 758, 764-65 (9th

26  Cir.1987).  "Absolute judicial immunity is not reserved solely for judges, but extends to

1    nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" In re Castillo,

2    297 F.3d 940, 947 (9th Cir. 2002).  Furthermore, "[a]n absolute immunity [defense] defeats a suit

3    at the outset, so long as the official's actions were within the scope of the immunity." See Imbler

4    v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S. Ct. 984, 990 n. 13 (1976).

5             The case cited as authority by defendants in support of their assertion of

6    entitlement to quasi-judicial immunity is Munoz v. Kolender, 208 F. Supp.2d 1125, 1152

7    (S.D.Cal. 2002), which in turn relies on an Eleventh Circuit case, Roland v. Phillips, 19 F.3d

8    552, 557 (11th Cir. 1994).  In Munoz, the district court, in granting absolute quasi-judicial

9    immunity from suit in his official capacity for damages to the defendant San Diego County

10   Sheriff for the execution of court orders in retaining custody of Munoz, pending SVP

11   proceedings (inter alia, holding a SVP civil detainee under the same conditions as those to which

12   criminal detainees were subject), asserted that the defendant sheriff could not be held liable in his

13   official capacity "[a]bsent a policy, custom, or procedure so seriously deficient as to violate a

14   constitutional right and a showing of direct liability through supervisory management...."

15            The undisputed facts of the instant case do not demonstrate that the manner of

16   execution of the state Superior Court's order(s) implicated in any way the manner of plaintiff's

17   placement or retention in the Jail, as plaintiff points out (Opp., pp. 12-13), but refer explicitly to

18   his transport to Shasta County Court for re-commitment proceedings.  The transport/custody

19   order(s) do not give carte blanche to defendants for plaintiff to be confined in any manner

20   whatever while he was in custody at the jail awaiting his re-commitment hearing.  Roland v.

21   Phillips, 19 F.3d at 557, the Eleventh Circuit case, does not say otherwise but rather simply finds

22   quasi-judicial immunity appropriate for an executing law enforcement officer who carries out a

23   valid verbal or written judicial order.  In this case, the state court transport/custody orders were

24   not placed at issue; rather, the county's housing policy or practice for pretrial civil detainees is

25   \\\\\

26   \\\\\

21

1   the gravamen of this action.[24]  Defendants do not show a demonstrable basis for entitlement to

2   quasi-judicial immunity.

3   Defendant Shasta County Board of Supervisors

4           Defendants also aver that the defendant Shasta County Board of Supervisors does

5   not establish jail policy.  MSJ, pp. 23-24.  Plaintiff contends that he does not allege that the

6   Board establishes the customs, policies and practices of the Jail, but rather that the Board

7   allocates funds to the Jail based on their approval of the Jail policies, advancing a theory of

8   liability based on approval or ratification of Jail policies by the Board.  Opp., p. 35.   In their

9   reply, defendants observe that plaintiff sets forth no facts to demonstrate that the Board of

10  Supervisors established policy at the Jail.  Reply, p. 2.  However, that is not the dispositive

11  question.

12          The Ninth Circuit has found that a county sheriff acts on behalf of the county in

13  the oversight and management of county jails.  Cortez v. County of Los Angeles, 294 F.3d 1186,

14  1190 (9th Cir. 2002).  Under California law, "[s]heriffs are given broad statutory authority to

15  manage county jails...."  Id., citing Cal. Govt. Code § 26605 ("sheriff shall ...be sole and

16  exclusive authority to keep the county jail and the prisoners in it....").  As the jail administrator,

17  "the Sheriff is responsible for developing and implementing policies pertaining to inmate

18  housing."  Id.

19           "[S]heriffs answer to the county for their conduct, even in their law enforcement

20  capacities."  Id., at 1191 [citations omitted].   "The county board of supervisors is charged with

21  the responsibility of ensuring the sheriff's faithful performance of his duties."  Id., citing Brewster

22  v. Shasta County, 275 F.3d 803, 808 (9th Cir. 2001) (citing Cal. Govt. Code § 25303)[25]; Dibb v.

23

24      [24]  The undersigned has previously observed that plaintiff has sought to implicate the
     conditions of his confinement as a civil detainee within the Jail but not the fact of his placement
25   in the Jail per se.  See August 12, 2004, Findings and Recommendations, p. 13, footnote 8.

26      [25] "The board of supervisors shall supervise the official conduct of all county officers, and
     officers of all districts and other subdivisions of the county, and particularly insofar as the

County of San Diego, 8 Cal.4th 1200, 1210, 36 Cal. Rptr.2d 55 (1994) ("under section 25303, the board of supervisors has a statutory duty to supervise the conduct of all county officers"); see also, Streit v. County of Los Angeles, 236 F.3d 552 (9th Cir. 2001).  Thus, the Board of Supervisors is not entitled to summary judgment on the grounds that it had nothing to do with the placement of plaintiff in this case.  At least, further factual development would be required.

Conclusion

        Accordingly, IT IS HEREBY RECOMMENDED that:

        1.  Defendants' September 9, 2005, motion for summary judgment be granted:

        a.)  Granted as to plaintiff's inapposite Fifth Amendment claims for violations of the Double Jeopardy and Ex Post Facto Clauses;

        b.)  Granted with respect to any claims made pursuant to the First, Sixth and Eighth Amendment claims;

        c.)  Granted as to plaintiff's claims of violations of his rights under the substantive due process clause under the Fourteenth Amendment;

        d.)  Granted on the basis of qualified immunity;

        2.  Judgment be entered for defendants.[26]

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

---

functions and duties of such county officers and officers of all districts and subdivisions of the county related to the assessing, collecting, safekeeping, management, or disbursement of public funds.  It shall see that they faithfully perform their duties...."  Cal. Govt. Code § 25303, in relevant part.

[26]  The grounds on which defendants' motion were denied do not affect the fact that judgment should be entered for defendants.  Of course, to the extent defendant "Board of Supervisors" is sued as an entity, in lieu of individuals, qualified immunity would not apply.  However, the undersigned has found no constitutional violation in the first instance.

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:   7/5/06

                                                  /s/ Gregory G. Hollows

6                                                 _____

7                                                 GREGORY G. HOLLOWS
                                                  UNITED STATES MAGISTRATE JUDGE

8   GGH:009
    meye0241.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26